UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2007 MAY 21  P 12: 53

DISTRICT COURT
DISTRICT OF MASS.

DINO N. THEODORE,
       Plaintiff

v.

WINTER PLACE, L.L.C.
       Defendant

CIVIL ACTION NO.: 07 CA 10966 NG

MAGISTRATE JUDGE Bowler

## COMPLAINT

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. The plaintiff, Dino N. Theodore brings this cause against Winter Place, L.L.C. ("Winter Place") and alleges as follows:

### PARTIES

1. The plaintiff, Dino N. Theodore, age 47, is paralyzed from the chest down and requires the use of a wheelchair for ambulation. He suffered an accidental gunshot wound to the T7 vertebrae in 1981.

2. Mr. Theodore resides with his wife and two children at 1305 Methuen Street, Dracut, Massachusetts. He is a practicing attorney employed by the Department of Industrial Accidents, 160 Winthrop Avenue, Lawrence, Massachusetts. He has been admitted to practice law in Massachusetts since 1993.

3. Mr. Theodore is a qualified individual with disabilities within the meaning of all applicable statutes including the ADA and Massachusetts statutes.

4. The defendant, Winter Place, is a duly organized Massachusetts corporation with a usual place of business at 3 Winter Place, Boston, Massachusetts 02108.

5. Since 2001, Winter Place has owned and operated a Boston landmark restaurant known as Locke-Ober at 3 Winter Place, Boston, Massachusetts.

6. Locke-Ober is a place of public accommodation subject to the requirements of the Title III of the ADA.

7. The defendant, Winter Place, is a private entity that operates a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181(7)(E).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

8. Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

9. Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

10. After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

11. In signing the ADA into law on July 26, 1990, President George H.W. Bush stated:

> "Last year, we celebrated a victory of international freedom. Even the strongest person couldn't scale the Berlin Wall to gain the elusive promise of independence that lay just beyond. And so, together we rejoiced when that barrier fell. And now I sign legislation which takes a sledgehammer to another wall, one which has for too many generations separated Americans with disabilities from the freedom they could glimpse, but not

grasp. Once again, we rejoice as this barrier falls for claiming together we will not accept, we will not excuse, we will not tolerate discrimination in America."

12. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

13. In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendant's facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

14. The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

15. A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

16. This case arises out of the defendant's unlawful practice of denying meaningful and equal access to the facilities, goods and services offered at Locke-Ober, 3 Winter Place, Boston, Massachusetts to persons with disabilities, such as the plaintiff, Dino N. Theodore.

## JURISDICTION AND VENUE

17. The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendant is subject to personal jurisdiction.

18. Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of Massachusetts.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

19. On November 17, 2006, Mr. Theodore attended the "Workers' Compensation Law Conference 2006" at the Massachusetts Continuing Legal Education Conference Center located at 10 Winter Place, Boston, Massachusetts. On his way into the MCLE Conference Center, Mr. Theodore was impressed by the appearance of Locke-Ober and thought about having lunch there.

20. MCLE published an article that Mr. Theodore had written. He was proud that the faculty presented it to the conference attendees.

21. During a break in the conference, several lawyers and judges were talking about dining at Locke-Ober afterwards. Mr. Theodore was invited to join them. None of the other lawyers or judges were in wheelchairs.

22. Before returning to the conference room after the break, Mr. Theodore went to the front entrance of Locke-Ober. He saw that there was a step at the initial entrance and a second step thereafter. He tried to find another accessible entrance but could not.

23. He had great difficulty maneuvering his wheelchair near the entrances due to the cobblestone and brick surface. He nearly fell from his chair twice. Frustrated and embarrassed, he returned to the MCLE Conference Center.

24. Mr. Theodore did not want to impose on his colleagues by declining the invitation and informing them that he could not get inside Locke-Ober. Instead, he quietly left the conference before it was over.

25. Mr. Theodore would have dined at Locke-Ober with his colleagues, but for its lack of a wheelchair-accessible entrance.

26. On May 16, 2007, Mr. Theodore placed a telephone call to Locke-Ober to inquire whether there was a wheelchair accessible entrance that he perhaps had not seen on November 17, 2006.

27. The person who took his call told him that there is one step at the front door and at least two other steps that he would have to be lifted over in order to get inside the main dining room. The person also told Mr. Theodore that there are dining rooms on upper levels of the restaurant, but that there is no elevator.

28. Mr. Theodore wishes to patronize Locke-Ober in the future as he expects to attend other events at the MCLE Conference Center, but he continues to be denied meaningful access to Locke-Ober due to the architectural barriers to wheelchair access that continue to exist there.

29. The defendant has discriminated against the plaintiff and continues to discriminate against the plaintiff by denying him access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of Locke-Ober as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

30. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. The regulations are codified at 28 C.F.R. Part 36. The regulations are known as the "ADAAG's" or the "Americans with Disabilities Act Accessibility Guidelines."

31. With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the

facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2).

32. All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible. For example, if during renovations a doorway is being relocated, the new doorway must be wide enough to meet the new construction standard for accessibility. When alterations are made to a primary function area, an accessible path of travel to the altered area must also be provided. The bathrooms, telephones, and counters serving that area must also be made accessible. These additional accessibility alterations are required to the extent that the added accessibility costs do not exceed 20% of the cost of the original alteration.

33. On information and belief, Locke-Ober underwent renovations in 2001, such that including accessible features was mandatory, but Winter Place did not include accessibility features in its renovations.

34. Even if Locke-Ober never was an altered facility within the meaning of the ADA, the defendant is required to remove architectural barriers to wheelchair access to the extent that such modifications would be "readily achievable."

35. 42 U.S.C. § 12182(2)(A)(iv) provides that "discrimination" under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

36. Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

37. The "readily achievable" requirement is based on the size and resources of the business. Larger businesses with more resources are expected to take a more active role in removing barriers than small businesses.

38. The ADA also recognizes that economic conditions vary. When a business has resources to remove barriers, it is expected to do so; but when profits are down, barrier removal may be reduced or delayed.

39. Barrier removal is an ongoing obligation. A business is expected to remove barriers as resources become available.

40. Despite having resources available for renovations, Winter Place never devoted any funds to readily achievable removal of architectural barriers at Locke-Ober.

41. Founded in 1919, the National Restaurant Association ("NRA") is the leading business association for the restaurant industry. It represents more than 380,000 member restaurant establishments. The National Restaurant Association has published information to educate its members on how to comply with the ADA. (EXHIBIT A).

42. Mr. Theodore intends to return to Locke-Ober as soon as the architectural barriers to wheelchair access are removed.

43. Mr. Theodore would like to patronize Locke-Ober, but he does not wish to engage in the futile gesture of trying to do so and of attempting to gain access to each and every feature of it because he knows that barriers to wheelchair access exist there and the defendant has not and does not intend to remove architectural barriers to access there.

44. Mr. Theodore has suffered an injury in fact as a result of the defendant's non-compliance with the ADA. His desire to return to Locke-Ober creates a real and immediate threat of future injury.

45. The injunctive relief requested below will redress Mr. Theodore's injury.

45. On information and belief, Mr. Theodore alleges that there are other ADAAG violations present within Locke-Ober that will be more fully alleged upon discovery and further inspection.

46. The defendant has not complied with accessibility standards to the maximum feasible.

47. By maintaining such barriers, Winter Place failed to comply with ADA and access requirements for areas of new construction or alteration.

48. The actions and initiatives that Winter Place has failed to undertake in order to make Locke-Ober accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendant.

49. The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendant will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiff has no adequate remedy at law.

WHEREFORE, The plaintiff requests that the Court will order the defendant to alter Locke-Ober to make it readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiffs appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

Respectfully submitted,
The Plaintiff, DINO N. THEODORE,

By his Attorneys,

*Nicholas S. Guerrera*
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800

Dated: May 17, 2007